UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MID-CONTINENT CASUALTY COMPANY, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:22-CV-2184-B |
| VIBRANT BUILDERS, LLC, and MOSER UP AT HENDERSON, INC., | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Mid-Continent Casualty Company ("Mid-Continent")'s Motion for Summary Judgment (Doc. 37), Defendant Vibrant Builders, LLC ("Vibrant")'s Cross Motion for Summary Judgment on the Duty to Defend (Doc. 44), and Defendant Moser Up at Henderson, Inc. ("Moser Up")'s Cross Motion for Summary Judgment on the Duty to Defend (Doc. 43). For the reasons set forth below, the Court **DENIES** Mid-Continent's Motion, and **GRANTS** Vibrant's and Moser Up's (collectively, "Defendants") Motions. The Court further **DISMISSES WITHOUT PREJUDICE** Mid-Continent's declaratory judgment claim on the duty to indemnify as unripe.

I.

BACKGROUND

This is an insurance dispute. Vibrant is a construction company. *See* Doc. 37-2, App'x, 140. Mid-Continent is an insurer. *Id.* at 5, 69. Mid-Continent issued an insurance policy to Vibrant that required Mid-Continent to defend Vibrant in "any suit seeking . . . damages" covered by that

policy. *Id.* at 16, 82. Vibrant's co-defendant, Moser Up, has since sued Vibrant in a separate lawsuit for damages allegedly caused by Vibrant. *Id.* at 130–46. Mid-Continent believes that it does not have a duty to defend or indemnify Vibrant for the claims asserted by Moser Up. Doc. 8, Am. Compl., 12–22. Defendants argue that Mid-Continent does have such a duty. Doc. 43, Moser Up Mot., 1; Doc. 44, Vibrant Mot., 6. This lawsuit was initiated to resolve this dispute. *See generally*, Doc. 8, Am. Compl.

Vibrant obtained two insurance policies from Mid-Continent. *See* Doc. 37-2, Pl.'s App'x, 5–128. The first policy provided coverage from December 25, 2017, to December 25, 2018; the second policy provided coverage from December 25, 2018, to December 25, 2019. *Id.* at 5, 69. Aside from the period of coverage, the two policies (collectively, the "Policy") were identical. *Compare id.* at 5–67, *with id.* at 69–128.

Under the Policy, Mid-Continent agreed to insure certain "property damage." *Id.* at 16, 82. Specifically, the Policy provides coverage for property damage if:

> (1) The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> (2) The . . . "property damage" occurs during the policy period; and
> (3) Prior to the policy period, no insured . . . knew that the . . . "property damage" had occurred, in whole or in part . . . .

*Id.* The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 30, 96. The Policy also requires Mid-Continent to defend Vibrant Builders against any suit for "property damage" that is covered by the Policy. *Id.* at 16, 82. However, Mid-Continent has "no duty to defend [Vibrant] against any suit seeking damages for . . . property damage to which [the Policy] does not apply." *Id.*

Vibrant was later hired to assist in the construction of the Moser Up Condominiums in Dallas, Texas. *Id.* at 132–33. In that role, Vibrant "supervised, directed, managed, constructed, designed, provided materials, installed materials, facilitated repairs, maintained, inspected, and/or played other significant roles in the development, construction, sales, marketing, and repair of [the condominiums]." *Id.* at 133. After construction was completed, however, Defendant Moser Up, the condominium's homeowner's association, sued Vibrant in state court (the "Underlying Suit"), alleging that Vibrant was negligent in the construction, design, and installation of the condominiums. *See generally id.* at 130–146. Moser Up further alleged that there was extensive damage to the condominiums as a result of Vibrant's negligence. *See id.* at 135.

Mid-Continent initiated the present suit against Vibrant and Moser Up to obtain a declaratory judgment that it has no duty to defend or indemnify Vibrant in the Underlying Suit. *See* Doc. 8, Am. Compl., 16–20. Mid-Continent now moves for summary judgment on both of those claims. *See* Doc. 37, Pl.'s Mot. Moser Up and Vibrant have cross-moved for partial summary judgment solely on the duty to defend. *See* Doc. 43, Moser Up Mot.; Doc. 44, Vibrant Mot. The Court considers the Motions below.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary-judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab'ys*, 919 F.2d 301, 303 (5th Cir. 1990).

Usually, this requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citations omitted).

Once the summary-judgment movant has met this burden, the burden shifts to the non-movant to "go beyond the pleadings and designate specific facts" showing that a genuine issue exists. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). Instead, the non-moving party must "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (citations omitted).

"[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted). But the Court need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998) (citations omitted). If the non-movant is unable to make the required showing, the Court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

## ANALYSIS

Mid-Continent seeks a declaratory judgment that it has (1) no duty to defend Vibrant in the Underlying Suit and (2) no duty to indemnify Vibrant for any damages awarded in the Underlying Suit. *See* Doc. 8, Am. Compl., 16–20. "Under Texas law, an insurer may have two

responsibilities relating to coverage—the duty to defend and the duty to indemnify." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012) (citing *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (5th Cir. 2011)). "The Texas Supreme Court has explained that the two duties are distinct, and they are to be decided separately." *Gilbane Bldg. Co.*, 664 F.3d at 594 (citing *D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)). Here, the Court considers the duty to defend first.

A.  *Duty to Defend*

The Policy requires Mid-Continent to defend Vibrant Builders against any suit for "property damage" that is covered by the Policy. Doc. 37-2, App'x, 16, 82. However, Mid-Continent has "no duty to defend [Vibrant] against any suit seeking damages for . . . property damage to which [the Policy] does not apply." *Id*. Thus, the question in this case is whether the property damage Moser Up alleges that Vibrant caused is covered by the Policy. The Court concludes that it is.

"The duty to defend is a creature of contract arising from a liability insurer's agreement to defend its insured against claims or suits seeking damages covered by the policy." *Loya Ins. Co. v. Avalos*, 610 S.W.3d 878, 880–81 (Tex. 2020). To determine whether a duty to defend exists, Texas courts generally apply the so-called "eight-corners rule." *Pharr-San Juan-Alamo Indep. Sch. Dist. v. Texas Pol. Subdivisions Prop./Cas. Joint Self Ins. Fund*, 642 S.W.3d 466, 472 (Tex. 2022). Under this eight-corners rule, "the insurer's duty to defend is determined by comparing the allegations in the plaintiff's [complaint] to the policy provisions, without regard to the truth or falsity of those allegations and without reference to facts otherwise known or ultimately proven." *Windermere Oaks Water Supply Corp. v. Allied World Specialty Ins. Co.*, 67 F.4th 672, 675 (5th Cir. 2023) (alterations in original) (quoting *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 199 (Tex. 2022)). "The rule's name derives from the fact that only two documents are ordinarily relevant to

the determination of the duty to defend: the policy and the plaintiff's pleading." *Monroe*, 640 S.W.3d at 199; *see also Richards v. State Farm Lloyds*, 597 S.W.3d 492, 494 (Tex. 2020); *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 309 (5th Cir. 2010). "Resort to evidence outside the four corners of these two documents is generally prohibited." *Siplast, Inc. v. Emps. Mut. Cas. Co.*, 23 F.4th 486, 492 (5th Cir. 2022) (citation omitted).

"The party seeking coverage has the initial burden of establishing that the underlying claims potentially state a cause of action covered by the policy." *BITCO Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, 31 F.4th 325, 329 (5th Cir. 2022). "If the petition or complaint alleges at least one cause of action potentially within the policy's coverage, then the insurer is obligated to defend the insured." *Penn-Am. Ins. Co. v. Tarango Trucking, L.L.C.*, 30 F.4th 440, 444 (5th Cir. 2022). "After the insured meets his burden to show that the alleged facts in the petition state a potential claim against him, to defeat the duty to defend, the insurer bears the burden of showing that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims . . . ." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004). "If an exclusion is subject to more than one reasonable construction, [courts] adopt the interpretation urged by the insured as long as it is not unreasonable and even if the insurer's interpretation 'appears to be more reasonable or a more accurate reflection of the parties' intent.'" *Tarango Trucking*, 30 F.4th at 444 (citation omitted).

Applying these principles here, the Court concludes that Mid-Continent has a duty to defend Vibrant.

1. Coverage

Defendants have the initial burden to show that the facts alleged in the Underlying Suit fall within the Policy's coverage. *See BITCO Gen. Ins.*, 31 F.4th at 329. Here, the Policy provides coverage if the following conditions are met:

> (1) The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> (2) The . . . "property damage" occurs during the policy period; and
> (3) Prior to the policy period, no insured. . . knew that the . . . "property damage" had occurred, in whole or in part . . . .

Doc. 44-2, Def.'s App'x, 16, 82. As relevant to the present dispute, the Policy defines "coverage territory," "occurrence," and "property damage" as follows:

> "Coverage territory" means . . . [t]he United States of America (including its territories and possessions), . . . ;
> . . .
> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
> . . .
> "Property damage" means . . . [p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it[.]

*Id.* at 28, 30, 94, 96. Finally, the "policy period" ran from December 25, 2017, to December 25, 2019. Doc. 37-2, Pl.'s App'x, 5, 69.

Thus, to discharge their initial burden of showing "that the underlying claims potentially state a cause of action covered by the policy," *Tarango Trucking*, 30 F.4th at 444, Defendants must establish that the Underlying Suit alleges: (1) physical injury to tangible property that (2) is caused by an accident, (3) takes place in the United States, (4) occurred sometime between December 25, 2017, and December 25, 2019, and (5) that Vibrant was unaware of the property damage prior to December 25, 2017. *See* Doc. 44-2, Def.'s App'x, 16, 28, 30, 82, 94, 96; Doc. 37-2, Pl.'s App'x,

5, 69. There is no dispute as to the fifth requirement. *See generally* Doc. 37, Pl.'s Mot. Thus, the Court only considers whether Defendants have satisfied their burden with respect to the first four requirements.

Here, the operative pleading in the Underlying Suit, the first amended petition, asserts a cause of action that potentially falls within the Policy's coverage. The first amended petition alleges that Vibrant was engaged as a contractor to assist in the construction and repair of the Moser Up condominiums, which are located in Dallas, Texas. Doc. 37-2, Pl.'s App'x, 132–33, 140. In that role, Vibrant "supervised, directed, managed, constructed, designed, provided materials, installed materials, facilitated repairs, maintained, inspected, and/or played other significant roles in the development, construction, sales, marketing, and repair of [the condominiums]." *Id.* at 136. However, the first amended petition continues, Vibrant "negligently, carelessly, [tortiously], and wrongfully fail[ed] to use reasonable care in the development, design, construction, maintenance, supervision, inspection, and repair of [the condominiums]." *Id.* And as a result of these mistakes, the condominiums suffered "damages that began when the building was improperly constructed, and upon the first rain event that followed the construction of each element." *Id.* at 134. Specifically, the first amended petition alleges that Vibrant improperly constructed, designed, and installed:

- The "TPO roofing resulting in water intrusion and damage to framing materials, other building components, insulation, and interior finishes such as drywall, base boards, and flooring, among other things";
- "[S]kylights, gutters, and scuppers resulting in water intrusion and damage to framing materials, other building components, insulation, and interior finishes such as drywall, base boards, and flooring, among other things";
- "[T]he stucco cladding systems resulting in severe cracks and bulges, efflorescence on soffits and staining below, water intrusion and damage to framing materials, other building components, insulation, and interior finishes such as drywall, base boards, and flooring, among other things";

- "[T]he moisture management system such that the drainage of water is inhibited on/or around windows and doors resulting in water intrusion and damage to framing materials, other building components, insulation, and interior drywall, baseboards, carpet, and flooring among other things";
- "[W]indows and doors resulting in water intrusion and damage to framing materials, other building components, insulation, and interior finishes such as drywall, base boards, and flooring, among other things";
- The "adhered wood siding to TPO such that wood planks are falling off resulting in damage to the surrounding building components and property, and further, resulting in life safety hazard to people below";
- The "concrete flatwork such that water ponds on sidewalks, shared driveways, and allows water intrusion into garages"; and
- The "balcony railings such that the rails are rusting prematurely, resulting in staining to the surfaces below."

*Id.* at 134–35.

These allegations are sufficient to bring the negligence claim against Vibrant in the Underlying Suit within the Policy's coverage. First, the first amended petition is replete with allegations of "property damage" within the meaning of the Policy. Doc. 44-2, Def.'s App'x, 30, 96 ("'Property damage' means . . . [p]hysical injury to tangible property . . . ."). The first amended petition alleges that "water intrusion" resulted in physical injury to, *inter alia*, framing materials, insulation, interior finishes, carpeting, garages, and railings. *Id.* at 134–35. And framing materials, insulation, interior finishes, carpeting, garages, and railings all constitute "tangible property." *Adams v. Great Am. Lloyd's Ins. Co.*, 891 S.W.2d 769, 772 (Tex. App.—Austin 1995, no pet.) ("Tangible property is capable of being handled or touched and may be evaluated by the physical senses."); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 10 (Tex. 2007) ("The home and its component parts are clearly 'tangible property.'"). As such, the Underlying Suit sufficiently alleges "property damage."

Second, the property damage at issue in the Underlying Suit was allegedly caused by an "occurrence" within the meaning of the Policy. Doc. 44-2, Def.'s App'x, 30, 96 ("'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."). According to the first amended petition, the damage to the property was caused primarily by water intrusion; and that water intrusion was itself caused by Vibrant's negligence in the design, construction, and installation of the Moser Up's condominiums' roofing, skylights, windows, doors, and balcony railings, among other things. Doc. 37-2, Pl.'s App'x, 133–35. A pleading that alleges property damage resulting from a defendant's negligence, such as the first amended petition, is akin to alleging that the property damage was the result of an accident. *See Lamar Homes*, 242 S.W.3d at 9–10; *cf. Indian Harbor Ins. Co. v. KB Lone Star, Inc.*, No. H-11-CV-1846, 2012 WL 3866858, at *25 (S.D. Tex. Sept. 5, 2012) ("Where the petition in the underlying suit(s) alleges that the defendant(s) acted intentionally rather than negligently, the insurer does not have a duty to defend." (alterations in original)). Thus, the first amended petition's allegations of Vibrant's negligence are sufficient to demonstrate that the property damage was caused an "occurrence" covered by the Policy, namely, by an accident.

Third, the property damage occurred within the "coverage territory." Doc. 44-2, Def.'s App'x, 28, 94 ("'Coverage territory' means . . . [t]he United States of America (including its territories and possessions)."). The allegedly damaged property were the Moser Up condominiums. *Id.* at 134–35. Those condominiums are located in Texas. *Id.* at 132. Texas is located in the United States. *See* Joint Resolution for Annexing Texas to the United States, 5 Stat. 797 (1845). Therefore, the property damage occurred within the "coverage territory."

Fourth, the first amended petition is sufficient to show that the property damage potentially occurred during the "policy period," i.e., between December 25, 2017, and December 25, 2019. *See*

*Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 30 (Tex. 2008). At the outset, the Court notes that the first amended petition does not allege when Vibrant began construction on the Moser Up condominiums or when the property damage allegedly occurred. *See* Doc. 37-2, App'x, 130–146. However, "Texas courts have held that a carrier is obligated to defend when the underlying petitions are silent about the time of the damage." *Indian Harbor Ins.*, 2012 WL 3866858, at *14 (S.D. Tex. Sept. 5, 2012) (citing *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833, 845–46 (Tex. App.—Dallas 2004, pet. denied). For example, in *GEICO Gen. Ins. Co. v. Austin Power Inc.*, the Houston Court of Appeals found that a pleading potentially alleged an injury during the policy period where it "alleged that the injury occurred before the petition was filed" and "[n]othing in the pleadings negate[d] the possibility that the injury occurred" during the policy period. 357 S.W.3d 821, 825 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Here too, the Underlying Suit was initially filed in October 2021, *see* Doc. 43, Moser Up Mot., 11, and the first amended petition alleges injuries that occurred before this date. Doc. 37-2, 137 (pleading that Vibrant's negligence "*has resulted* in damage to real or personal property."). And nothing in the first amended petition *negates* the possibility that property damage sued upon occurred within the requisite period. *See GEICO Gen. Ins.*, 357 S.W.3d at 825; *Lyda Swinerton Builders, Inc. v. Oklahoma Sur. Co.*, 903 F.3d 435, 448 (5th Cir. 2018). Because any doubts in the first amended petition are to be resolved in favor of coverage, the Court concludes that the Underlying Suit potentially alleges that the property damage occurred within the "policy period." *See Gehan Homes*, 146 S.W.3d at 846 ("In construing the allegations of the underlying suit, the pleadings are strictly construed against the insurer, and any doubt is resolved in favor of coverage.").

Mid-Continent, however, argues that Defendants were required to put forth extrinsic evidence establishing that property damage occurred during the policy period. *See* Doc. 38, Pl.'s Mot. Br., 7–10; Doc. 46, Pl.'s Resp., 3–6; Doc. 49, Pl.'s Resp., 3–5. While Mid-Continent acknowledges that the eight corners rule generally prohibits consideration of such extrinsic evidence, it argues that an exception to this rule is applicable under the Supreme Court of Texas's recent decision in *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195 (Tex. 2022). *See e.g.*, Doc. 46., Pl.'s Resp., 3–6. Mid-Continent correctly characterizes *Monroe* as adopting an exception to the eight corners rule. As the *Monroe* Court explained:

> [I]f the underlying petition states a claim that could trigger the duty to defend, and the application of the eight-corners rule, due to a gap in the plaintiff's pleading, is not determinative of whether coverage exists, Texas law permits consideration of extrinsic evidence provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved.

640 S.W.3d at 203. According to Mid-Continent, in this case, evidence of when the alleged property damaged occurred would satisfy each prequisite to the application of the *Monroe* exception. *See* Doc. 38, Pl.'s Mot. Br., 7–10; Doc. 46, Pl.'s Resp., 3–6; Doc. 49, Pl.'s Resp., 3–5. However, Mid-Continent continues, neither Defendant has presented any extrinsic evidence that the alleged property damage occurred in the policy period. *See* Doc. 38, Pl.'s Mot. Br., 7–10; Doc. 46, Pl.'s Resp., 3–6; Doc. 49, Pl.'s Resp., 3–5. And because they have failed to do so, Mid-Continent argues that it "has conclusively established the fact to be proven," i.e., that the damage occurred outside the policy period. Doc. 38, Pl.'s Mot. Br., 9.

Mid-Continent misunderstands how the *Monroe* exception works. Mid-Continent essentially argues that because certain extrinsic evidence *could* be considered, Defendants were *required* to come forward with such evidence. *See* Doc. 38, Pl.'s Mot. Br., 7–10. But *Monroe* does

not impose a *burden* on any party come forward with extrinsic evidence in the first instance; it merely permits a court, under certain circumstances, to consider extrinsic evidence that *has already been proffered*. *See Pharr-San Juan-Alamo Indep. Sch. Dist.*, 642 S.W.3d at 477 ("[W]e must apply the eight-corners rule to determine whether the [insurer] had a duty to defend . . . , and may not consider extrinsic evidence unless [the *Monroe* exception applies]."). If no extrinsic evidence is offered by the insured—which would presumably be most cases in light of the general bar against extrinsic evidence—*Monroe* simply does not come into play; instead, the eight-corners rule governs the analysis. And as explained, under the eight corners rule, the first amended petition raises facts which support the reasonable conclusion that the property damage potentially occurred during the policy period.

In sum, Defendants have shown that the damage alleged in the Underlying Suit falls within the Policy's coverage. There are five requirements to coverage under the Policy. Defendants have shown that the claims in the Underlying Suit meet each of these requirements. Thus, Defendants have discharged their initial burden.

2.  Exclusions

As Defendants have discharged their burden to establish that the claims in the Underlying Suit fall within the Policy's coverage, the burden shifts to Mid-Continent to demonstrate that those claims fall within a Policy exclusion. *See Northfield Ins. Co.*, 363 F.3d at 528. Mid-Continent argues that three Policy exclusions are applicable here. *See* Doc. 38, Pl.'s Mot. Br., 6–7. The Court considers the applicability of each exclusion in turn.

>    i.   *Property damage exclusions*

Mid-Continent first argues that the claims in the Underlying Suit fall within two exclusions for certain property damage. *See* Doc. 38, Pl.'s Mot. Br., 6. Specifically, it argues that they fall within the Policy's exclusion for "property damage" to:

> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Doc. 37-2, Pl.'s App'x, 17–20, 83–86.

The Fifth Circuit considered the scope of both exclusions in *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207 (5th Cir. 2009).[1] With respect to exclusion (5), the Court explained that it "applies only to damage caused during active physical construction activities[,] . . . [not] to damage caused during a prolonged suspension of active construction work." *Id.* at 213. With respect to exclusion (6), the Court held that it

> bars coverage only for property damage to parts of a property that were themselves the subject of defective work by the insured; the exclusion does not bar coverage for damage to parts of a property that were the subject of only nondefective work by the insured and were damaged as a result of defective work by the insured on other parts of the property.

*Id.* at 215.

---

[1] The language of the property damage exclusions at issue here mirrors the language of the exclusions in *Mid-Continent Cas. Co. v. JHP Dev., Inc.*. *See* 557 F.3d at 211 ("Exclusion j(5) excludes property damage to 'that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations. Exclusion j(6) excludes property damage to that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." (quotations and alterations omitted)).

Following the Fifth Circuit's interpretation of these two exclusions, it is clear that neither applies. Exclusion (5) does not apply to the claims in the Underlying Suit because the first amended petition alleges that the damage to the property "upon the first rain event that followed the construction of each element." Doc. 37-2, Pl.'s App'x, 134. If the damage to the property occurred "follow[ing] the construction," *id.*, then the damage was not "caused during active physical construction activities." *JHP Dev.*, 557 F.3d at 211. Exclusion (6) does not apply because the first amended petition alleges that some of the damaged property was not the subject of Vibrant's work. As one example, the first amended petition avers that Vibrant negligently installed the roof, and that as a result of this allegedly shoddy roof work, water intruded into the interior of the home, causing "damage to . . . interior finishes, such as drywall, base boards, and flooring." Doc. 37-2, Pl.'s App'x, 135. There are no allegations that Vibrant worked on the drywalls, baseboards, or flooring at all, let alone that Vibrant negligently preformed any work on such property. *See JHP Dev.*, 557 F.3d at 215. Accordingly, exclusion (6) is likewise inapplicable.

        ii.     *Your work exclusion*

Mid-Continent lastly argues that the claims in the Underlying Suit fall within the "Your Work Exclusion." Doc. 38, Pl.'s Mot. Br., 7. This exclusion precludes coverage for "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" Doc. 37-2, Pl.'s App'x, 20, 86. As relevant here, the Policy defines "your work" as "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." *Id.* at 31, 97.

Here, at least some claims in the Underlying Suit fall outside the plain language of this exclusion. The first amended petition alleges as damages, "[t]he reasonable and necessary cost for the replacement or repair of any damaged goods in the residence including any personal property."

Doc. 37-2, 135. The personal property of the residents is not "your work" under the Policy. *Id.* at 31, 97. Another's personal property is not "[w]ork or operation performed by [Vibrant] or on [Vibrant's] behalf," nor is it "[m]aterials, parts or equipment furnished in connection with such work or operations." *See id.* As the first amended petitions alleges damages to property other than Vibrant's work, the "your work" exclusion would not exclude coverage for every claim alleged in the Underlying Suit.

***

In sum, the Policy requires Mid-Continent to defend Vibrant against any suit for damages caused by Vibrant that are covered by the Policy. Vibrant has since been sued and has discharged its burden of showing that the claims alleged in the Underlying Suit fall within the Policy. Mid-Continent has not shown that any exclusion in the Policy completely bars coverage on the claims asserted in the Underlying Suit. As such, Mid-Continent has a duty to defend Vibrant in the Underlying Suit. Therefore, the Court **DENIES** Mid-Continent's Motion for Summary Judgment on its claim for a declaratory judgment that it has no duty to defend. It **GRANTS** Vibrant's and Moser Up's cross-motions for summary judgment on the same claim.

B.   *Duty to Indemnify*

Mid-Continent also asks for a declaratory judgment that it has no duty to indemnify Vibrant. Doc. 8, Am. Compl., 20. Mid-Continent has moved for summary judgment on that claim. Doc. 38, Pl.'s Mot. Br., 10. Defendants request that the Court defer consideration of the duty to indemnify issue until the Underlying Suit is resolved. Doc. 43, Moser Up Mot., 19; Doc. 44, Vibrant Mot., 11.

The Court concludes that it lacks subject-matter jurisdiction to resolve the indemnification issue because that claim is not ripe. Thus, it may not enter summary judgment on that claim, as

Mid-Continent requests, or defer consideration on it, as Defendants request. Instead, the proper course is dismissal without prejudice. *See Campos v. United States*, 888 F.3d 724, 738 (5th Cir. 2018).

Article III of the United States Constitution provides that federal courts only have the power to decide actual cases or controversies. U.S. CONST. art. III, § 2. The doctrine of ripeness "originate[s] in Article III's 'case' or 'controversy' language," and is also "drawn from prudential reasons for refusing to exercise jurisdiction." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (citing *DaimlerChrystler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). In determining ripeness, the Court must find that the issues are fit for judicial decision and that the parties will suffer hardship if the Court withholds consideration. *Id.* In general, a case is ripe "if any remaining questions are purely legal ones," but "is not ripe if further factual development is required." *Id.* at 587.

"While the duty to defend depends on the allegations in the pleadings, the duty to indemnify is triggered by the actual facts that establish liability in the underlying suit." *State Farm Lloyds v. Richards*, 966 F.3d 389, 396 (5th Cir. 2020) (quoting *Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 472 (5th Cir. 2009)). "Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded, unless 'the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.'" *Id.* at 396–97 (quoting *Northfield*, 363 F.3d at 529). Here, Mid-Continent has a duty to defend and the underlying lawsuit is ongoing so there is no justiciable controversy with respect to the indemnification claim.

Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Mid-Continent's declaratory judgment claim on the indemnity issue.

## IV.

## CONCLUSION

For these reasons, the Court **DENIES** Mid-Continent's Motion, and **GRANTS** Vibrant's and Moser Up's (collectively, "Defendants") Motions. The Court further **DISMISSES WITHOUT PREJUDICE** Mid-Continent's declaratory judgment claim on the duty to indemnify as unripe. As this Order fully resolves the parties' dispute, a final judgment will follow.

**SO ORDERED.**

**SIGNED: August 21, 2024.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE